## House et al. v. Farmers State Bank.
(Decided April 23, 1937.)

WM. LEWIS & SON for appellants.
C. R. LUKER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

The judgment from which appeal is prosecuted was rendered by the Laurel circuit court in two actions by appellee against Leander P. House, and others who were either joint makers or sureties (not including Mrs. House) upon notes executed to appellee bank. The two suits were consolidated below and on review will be considered together.

In suit No. 4359 appellee sought to recover of appellants $1,150, with interest from October 3, 1933. The note sued on was originally executed on April 3, 1928, the face being $1,000. It was renewed from time to time, and after August, 1929, some interest was included in the face. The final renewal was on January 2, 1933, and it was due some time in October, 1933.

The note in suit No. 4360 was for $1,500, the date not being given, but the last renewal was on February 9, 1933, and matured in August of the same year. It is observed that at least one of these notes had been executed as far back as 1928, and the other about the same time.

The pleadings and orders in each of the suits are very similar, the notable difference being in dates and amounts, both suits finally turning on a single issue, as will be seen later.

In each of the suits it was alleged that at the times of the execution of the notes Leander House was the owner of a tract of land described in each petition, containing about 200 acres, worth approximately $7,500; that while these notes were in the hands of the bank and unpaid, Leander, on April 28, 1928, conveyed the described tract to his wife, Martha House, "in order to cheat, hinder and delay the plaintiff in the collection

of the indebtedness owing to it, and in fraud of its rights." It is charged that, while the deed from Leander to his wife recited a consideration of $500, same was untrue; that in fact there was no passing valid consideration. It was alleged that Leander had at all times, during the indebtedness and at each renewal of the notes, represented that he was the owner of the tract in question. Appellee pleads that it had no knowledge of the execution of the deed between the husband and wife until they had accepted the final renewals some time in 1933.

In the two suits it was sought to recover the gross sum of $2,760 with certain interest, and, asserting as above set out that the deed was executed for the purpose of consummating a fraud, it was sought to have the deed adjudged void and of no effect. It was alleged that at the time of the execution of the deed Leander House was and is insolvent, and a like allegation is made with reference to his co-makers or sureties.

Demurrers were filed, but the record does not show affirmatively that the court passed on same. However, it is noted that in answering the defendants did not waive demurrer but, still insisting on same, answered.

By their joint answer the appellants denied for the most part all the allegations of the petition, admitting however, the execution of the notes, and likewise the transfer of the 200-acre tract by Leander House to his wife by deed of April 9, 1928, which they allege was based on a valuable consideration. Affirmatively they pleaded that they were married some time prior to 1902, at which time Mrs. House owned a small tract of land which she sold and used the proceeds to purchase another farm. They continued to live on this farm until 1920, when Mrs. House sold it to Emily Feltner for $5,000, and at about the same time "purchased from Dan George and Fred Williams two tracts of land and paid for same." It is alleged that the two tracts were purchased with funds belonging to Martha House, but that in the preparation of the deeds, by oversight or misunderstanding, the George tract was conveyed to Leander, and the smaller Williams' tract to Mrs. House. It is alleged that the larger or George tract should have been conveyed to Mrs. House and the Williams' tract to Leander. The purchase prices of the two tracts were respectively $7,500 and $3,200.

'A' short time thereafter they sold the Williams' tract to a son, W. C. House, for $3,200, the title to this tract then being in Martha House, and shortly thereafter, on April 9, 1928, Leander conveyed to his wife the George tract of land for the consideration mentioned above, this being the tract over which controversy arises.

In an amended joint answer they explain the transactions by saying that prior to the execution of the note (or notes) Leander was indebted to a bank at East Bernstadt in the sum of $4,000, and that prior to the note transaction they had executed a mortgage covering the George tract of land to the bank to secure the $4,000. The bank later demanded payment, and it was agreed that Mrs. House would convey the Williams' tract to the son for $3,200 and apply that much to the payment of the bank's mortgage debt, provided Leander would convey to her his title in the George tract. They allege that in conformity with the agreement the payment was made, and on the date above mentioned the George tract was conveyed to Mrs. House, thus, seemingly, making the consideration $500 as recited in the deed, plus the $3,200 applied on the bank debt.

The appellee replied to the joint answers and amended answers of appellants, making specific denials of the allegations of those pleadings without presenting any affirmative matter or new cause, thus leaving the issue one as to whether or not the deed from Leander to his wife was executed for the purpose of defrauding the bank and other creditors.

There is an intervening petition by the Land Bank Commissioner in which it is pleaded that the appellants had executed to the Land Bank a mortgage to secure the payment of a loan of $1,400 made to them on January 29, 1934. In the judgment below the court adjudged this debtor entitled to recover and that it had a prior lien, but, for some reason not disclosed, did not direct a foreclosure for its benefit. The Land Bank is not a party to this appeal.

There was considerable proof taken by both parties, which, for reasons hereinafter stated, will not be set out in detail, reference being made hereafter to only such portions as may have a bearing on the question which we have concluded is the controlling one.

Upon submission of the cause on the pleadings, exhibits, and proof, the court below adjudged appellee to be entitled to a recovery of the sum of $2,767, the total of the two notes, with interest from the respective due dates of each. It was further adjudged that the deed from Leander House to his wife be canceled, "insofar as it effects the plaintiff herein," and adjudges the entire tract to be in lien to secure the payment of the debt. A sale was ordered of so much of the land as should be necessary to satisfy the debt, interest, and cost, "any remainder to be paid to Martha and Leander House as their interests may appear." A deficiency judgment was also given, and from this entire judgment Martha and Leander House have prosecuted this appeal.

We have read the proof in the case at hand with considerable care, having in mind the statutes with regard to fraudulent and preferential conveyances, and also the rules in reference to transactions wherein the cancellation of a contract is sought. One rule is that the cancellation of a solemn contract, such as a deed, ought not to be decreed except in such cases as fraud is clearly shown. Another rule is that, where the parties to the contract occupy confidential relations toward each other, the courts will view the contract with some degree of suspicion. The first rule above mentioned is changed to the extent that the law throws the burden upon the one seeking to uphold the contract.

But we shall not go into a detailed statement of facts or proofs as bearing on this question, since we have concluded that so much of the action upon which it was sought by the bank to set aside the deed in question and subject the land to sale for its debt was barred by limitation.

Going back a moment for a detail of such facts as may be necessary to a discussion of this feature of the case, we find that the note sued on in suit No. 4359 was first executed October 3, 1927, with eleven renewals, the last being on January 2, 1933. In the No. 4360 suit the note was last renewed on February 9, 1933. The petition is blank as to the dates of the original note and its renewals, save and except as to the last one as above stated, but on proof it seems that the originals were executed not so far apart in respect of time. We gather from the proof that when these notes matured,

the bank refused renewals because the officers had learned that Mr. House had conveyed his land to his wife. At this point we note a discrepancy in pleading and proof. In the petitions it was alleged that the bank was extending credit and allowing renewals because of the representation by Mr. House that he was the owner of the land in question. On proof a bank officer said more than once, "He constantly represented to us, all along, during the periods of these renewals that he had plenty of property, and that he was good, and the paper was renewed from time to time on those specific representations of Mr. House."

The bank in filing its suit attached a copy of the deed between the husband and wife as an exhibit. This deed was executed and acknowledged before a notary public on April 9, 1928, and was shown by the clerk's certificate to have been recorded on the same date. The suits seeking to have the deed canceled were filed, one on the 23d and one on the 24th of February, 1934, more than five years and ten months after the execution and recording of the deed.

It is alleged in the petitions that "plaintiff had no knowledge or information of the execution of the fraudulent conveyance above set forth until after plaintiff had accepted the renewal of the obligation on January 2, 1933." The same language is used in No. 4360, except as to date of renewal, February 23, 1933. In the case of Elkhorn Coal Corp. v. Hite, 225 Ky. 735, 9 S. W. (2d) 1083, we held that the five-year statute of limitations (Ky. Stats. sec. 2515) applied, and, quoting from Jennings v. Fain, 226 Ky. 290, 10 S. W. (2d) 1101, 1103, after referring to the Elkhorn Case, said:

> "We had before us for consideration and application the two sections supra of our statute of limitations, and we therein held, in conformity with numerous prior opinions, referred to therein, that when the cause of action was based upon fraud that was perpetrated more than five years before the filing of the action, it was incumbent upon plaintiff to both allege and prove, not only that he did not discover the fraud within the five years, but also that he could not have done so by the exercise of reasonable diligence. We furthermore held in that opinion that if a public record, required to be kept, contained refuting information of the alleged

misrepresented fact or facts, then the one relying upon the fraud would have constructive notice thereof.''

See, also, Johnson v. Fetter, 224 Ky. 788, 7 S. W. (2d) 241, 246; Provident Savings Life Assurance Soc. v. Withers, 132 Ky. 541, 116 S. W. 350; Pierce v. J. B. Pierce's Trustee, 238 Ky. 495, 38 S. W. (2d) 254; Leitchfield Milling Co. v. Rogers, 239 Ky. 481, 39 S. W. (2d) 961.

A casual reference to the above case, and cases therein cited, are conclusive on the question of limitation; likewise they indicate that the allegation that fraud was not discovered until the notes had been last renewed did not sufficiently support a ground of relief. The allegation that Mr. House said that he had plenty of property is likewise insufficient.

We are aware that there was no specific affirmative plea of limitations, though facts are pleaded in the joint answer of appellants which are equivalent to such a plea. It is alleged by them that long prior to April 9, 1928, Martha House was the owner and in actual possession of the property in question; that she was such owner at the time of the execution of the notes and their renewals. She pleads all the facts showing in what manner she took deed of April, 1928, and asserts her legal title to the property as of and prior to that date, and at the time of the institution of this action. She pleads the facts as alleged ''in bar of any right of plaintiff to subject this land or any part of it'' to the payment of the debt sued on in the actions.

Whether or not the plea in bar is sufficiently stated to raise the question of limitations, we are of the opinion that the demurrer appropriately raised that question, as we so held in several well-considered cases.

That the petitions were not good on demurrer is of little doubt. In the petition in No. 4359 it is merely alleged that ''plaintiff had no knowledge or information of the execution of the fraudulent conveyance above set forth, until the plaintiff had accepted the renewal of the obligation on January 2, 1933.'' The same allegation appears in petition No. 4359, except the date of the acquirement of knowledge, which is fixed February 9, 1933. These allegations were coupled with the assertion that at the renewal dates Mr. House had rep-

resented that he was the owner of the tract in question, which allegation, however, was not borne out by proof. The officer of the bank testifying said that on the date when Mr. House sought to renew the note he went at once to the courthouse and found the deed, which, as is shown, had been recorded since April 1928. In Gragg v. Levi, 183 Ky. 182, 208 S. W. 813, we had under consideration the construction of the two limitation statutes, supra, and in construing these two sections together held that the plaintiff should begin action within the five-year period, but, if he allows the five-year period to elapse, he must allege and prove that the mistake was not only not discovered within the five years next before the bringing of suit, "but that the mistake could not have been sooner discovered by the exercise of reasonable diligence," and on this point there were cited on page 184 of the report in 183 Ky., 208 S. W. 813, supra, eight or ten cases. There is no showing of any diligence here on the part of the creditor bank; there is neither allegation nor proof showing any such diligence as is ordinarily required. In speaking of lack of diligence on the part of plaintiff in the case of Johnson v. Fetter, supra, we said it was the duty of one relying on fraud to "bestir himself, and, if he could have discovered the fraud or mistake by the exercise of reasonable diligence, it is his duty to do so. Such is the universal requirement, and it has been adopted and applied by this court in numerous cases."

In Jennings v. Fain, 226 Ky. 290, 10 S. W. (2d) 1101, 1103, we said, after setting out the duty of the complaining party to use diligence in discovery of the alleged fraud, and referring to Elkhorn Coal Co. v. Hite, supra:

> "In this case the deed conveying the title to the 8 acres, of which complaint is made, was of record in the office of the county court clerk of Jessamine county at the time of the alleged fraudulent representations relied on in plaintiff's second amended petition, and under the doctrine of the Hite opinion our limitations statute furnished a bar to that cause of action after the expiration of five years from the time the fraud was perpetrated."

As to the matter of the plea of limitations being properly raised by demurrer, we have only to refer to

some recent decisions of this court directly in point. See Forman v. Gault, 236 Ky. 213, 32 S. W. (2d) 977, in which we made specific reference to the general rule that limitation must, if relied upon, be specifically pleaded, but held:

> "the rule respecting an action for relief from fraud brought more than five years after the fraud was perpetrated is that the plaintiff must allege facts to excuse the delay or he fails to state a cause of action. * * * A demurrer to the petition necessarily raises the question, since the petition omits essential allegations,"

citing many cases on page 217 of 236 Ky., 32 S. W. (2d) 977, 979.

In Cox v. Simmerman, 243 Ky. 474, 48 S. W. (2d) 1078, in reaffirming the Gault Case, we elaborated the rule supra in reaching the same conclusion in regard to the necessity of pleading facts necessary to excuse delay, and reiterated the rule that demurrer properly raised the defense of limitation. See cases cited on page 477 of 243 Ky., 48 S. W. (2d) 1078, in Simmerman opinion. More recent authorities on both points may be found in Pierce v. J. B. Pierce's Trustee, and Leitchfield Milling Co. v. Rogers, supra, both of which reaffirm the principles in the above-cited cases.

Being of the opinion that both the petitions and proof in the two consolidated cases were insufficient in stating or showing any facts indicating diligence in discovery of the alleged fraud within the five-year period, and that the demurrer, which was not waived, properly raised the issue of limitations, we conclude that the court should have adjudged both the allegations of the petitions and the proof insufficient, and should have dismissed so much of appellee's petition as sought to set aside the conveyance. The judgment on the notes need not be disturbed.

So much of the judgment as decrees recovery on the two notes is affirmed; that part which adjudges the deed canceled is reversed, with directions to set same aside and enter judgment in conformity herewith.